**BEFORE THE**
**UNITED STATES JUDICIAL PANEL ON**
**MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **In re Bank of America California Unemployment Benefits Litigation** | **MDL No.** |

**BRIEF IN SUPPORT OF PLAINTIFF JENNIFER YICK'S MOTION TO TRANSFER ACTIONS TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

## TABLE OF CONTENTS

I.   FACTUAL BACKGROUND AND OVERVIEW OF THE RELATED ACTIONS ....... 1

  A.   Common Questions of Fact ................................................................................. 2

  B.   Common Claims, Legal Theories, and Relief Sought ......................................... 4

  C.   Similar Class Definitions .................................................................................... 5

  D.   Similar Procedural Postures ................................................................................ 6

II.   ARGUMENT ................................................................................................................. 7

  A.   The Related Actions Should Be Transferred and Centralized for Consolidated or
       Coordinated Pretrial Proceedings. ...................................................................... 8

    1.   Transfer is appropriate because the Related Actions involve complex common
         questions of fact and law. ............................................................................... 8

    2.   Transfer and centralization will promote the just and efficient conduct of the
         Related Actions. ............................................................................................ 10

    3.   Transfer and centralization will further the convenience of the parties and
         witnesses ....................................................................................................... 12

  B.   The Related Actions Should Be Transferred to and Centralized in the
       Northern District of California ........................................................................... 14

III.  CONCLUSION ............................................................................................................ 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Bank of N.Y. Mellon Corp. Foreign Exch. Transactions Litig.*,
  857 F. Supp. 2d 1371 (J.P.M.L. 2012)..........................................................................8

*In re Bayer Healthcare LLC, Merial Limited Flea Control Prods. Mktg. & Sales*
  *Practices Litig.*,
  844 F. Supp. 2d 1369 (2012) ....................................................................................14

*In re Commercial Money Ctr., Inc. Equip. Lease Litig.*,
  229 F. Supp. 2d 1379 (J.P.M.L. 2002).....................................................................12

*In re Commodity Exchange, Inc., Gold Futures & Options Trading Litig.*,
  38 F. Supp. 3d 1394 (J.P.M.L. 2014)........................................................................11

*In re Erie COVID-19 Bus. Interruption Prot. Ins. Litig.*,
  No. MDL 2969, 2020 WL 7384529 (J.P.M.L. Dec. 15, 2020)................................14

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
  No. 18-md-2843-VC (N.D. Cal.)...............................................................................15

*In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*,
  398 F. Supp. 2d 1365 (J.P.M.L. 2005)........................................................................9

*Gelboim v. Bank of America Corp.*,
  574 U.S. 405 (2015)..............................................................................................8, 11

*In re Jamster Mktg. Litig.*,
  427 F. Supp. 2d 1366 (2006) ....................................................................................14

*In re Local TV Advert. Antitrust Litig.*,
  338 F. Supp. 3d 1341 (J.P.M.L. 2018)......................................................................14

*In re Midwest Milk Monopolization Litig.*,
  379 F. Supp. 989 (J.P.M.L. 1974).......................................................................12, 14

*In re Multidistrict Private Civil Treble Damage Litig. Involving Plumbing Fixtures*,
  308 F. Supp. 242 (J.P.M.L. 1970).........................................................................9, 11

*In re Nat'l Prescription Opiate Litig.*,
  2018 U.S. Dist. LEXIS 170489 (J.P.M.L. Oct. 3, 2018) ..........................................12

*In re Nat'l Student Mktg. Litig.*,
  368 F. Supp. 1311 (J.P.M.L. 1972).............................................................................8

*In re Plumbing Fixture Cases*,
  298 F. Supp. 484 (J.P.M.L. 1968) .........................................................................10

*In re Radiation Incident at Washington*,
  400 F. Supp. 1404 (J.P.M.L. 1975) .........................................................................9

*In re Roundup Prods. Liab. Litig.*,
  214 F. Supp. 3d 1346 (J.P.M.L. 2016) ...................................................................15

*In re Tyson Foods, Inc. Chicken Raised Without Antibiotics Consumer Litig.*,
  582 F. Supp. 1378 (J.P.M.L. 2008) .......................................................................10

*Vasquez v. Draper & Kramer Mortg. Corp.*,
  No. 20-cv-06635-YGR, 2021 U.S. Dist. LEXIS 13572 (N.D. Cal. Jan. 22, 2021) .................16

*In re Viagra Prods. Liab. Litig.*,
  414 F. Supp. 2d 1357 (2006) .................................................................................14

**Statutes**

15 U.S.C. § 1693 *et seq.* (Electronic Funds Transfer Act) .........................................4, 9

28 U.S.C. § 1407 ................................................................................... *passim*

Cal. Bus. & Prof. Code § 17200 *et seq.* (California Unfair Competition Law) .........................4, 9

Cal. Civ. Code § 1798.100 *et seq.* (California Consumer Privacy Act) ...............................4, 5, 9

Cal. Civ. Code § 1798.150(a)(1)(A) .................................................................5

**Rules**

Central District of California Local Rules 7-10 to 7-11 ..............................................6

Federal Rule of Civil Procedure 45 ..................................................................17

JPML Rule of Procedure 6.2 ...........................................................................1

**Other Authorities**

*In re Approval of the Judicial Emergency Declared in the Central District of California*,
  Order (9th Cir. Apr. 9, 2020), *available at* https://tinyurl.com/ouse75k3 .........................16

*In re Approval of the Judicial Emergency Declared in the Eastern District of California*,
  Order (9th Cir. Apr. 16, 2020), *available at* https://tinyurl.com/e29tuh7 ..........................16

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of Judicial Panel on Multidistrict Litigation ("JPML") Rules of Procedure, plaintiff Jennifer Yick in the proposed class action *Yick v. Bank of America, N.A.*, No. 3:21-cv-00376-VC (N.D. Cal.), respectfully moves for an order transferring the eleven putative class actions listed on the attached Schedule of Actions (the "Related Actions"), as well as any tag-along actions or other cases that may be filed asserting related or similar claims, to the Northern District of California (San Francisco Division) before the Honorable Vince Chhabria for coordinated or consolidated pretrial proceedings.

## I.   FACTUAL BACKGROUND AND OVERVIEW OF THE RELATED ACTIONS

The Related Actions presently consist of eleven putative class actions against Bank of America, N.A. ("Bank of America"), brought by fifteen named Plaintiffs in three different districts. There are the *Yick*, *Rodriguez*, *Willrich*, *McClure*, *Oosthuizen*, *Wilson*, *Mosson*, and *Cajas* actions in the Northern District of California ("Northern District"); the *Chong* and *Zoelle* actions in the Central District of California ("Central District"); and the *Wiggins* action in the Eastern District of California ("Eastern District"). *See* Schedule of Actions. All the Related Actions are brought by different law firms.[1] As explained below, the Related Actions involve common questions of fact, assert overlapping and often identical claims and legal theories, seek similar relief, propose similar class definitions, and are all in preliminary procedural postures.

---

[1] Plaintiffs' counsel in each of the Related Actions is as follows: *Yick v. Bank of America, N.A.*, No. 3:21-cv-00376-VC (N.D. Cal.) (Cotchett, Pitre & McCarthy, LLP); *Rodriguez v. Bank of America, N.A.*, No. 3:21-cv-00494-JCS (N.D. Cal.) (Casey Gerry Schenk Francavilla Blatt & Penfield LLP); *Willrich v. Bank of America, N.A.*, No. 3:21-cv-00547-TSH (N.D. Cal.) (Schack Law Group); *McClure v. Bank of America, N.A.*, No. 3:21-cv-00572-LB (N.D. Cal.) (Bottini & Bottini, Inc.); *Oosthuizen v. Bank of America, N.A.*, No. 4:21-cv-00615-KAW (N.D. Cal.) (Altshuler Berzon LLP and Kemnitzer, Barron & Krieg LLP); *Wilson v. Bank of America, N.A.*, No. 3:21-cv-00699-SK (N.D. Cal.) (Knox Ricksen LLP); *Mosson v. Bank of America, N.A.*, No. 3:21-cv-00743-JCS (N.D. Cal.) (Anderlini & McSweeney LLP); *Cajas v. Bank of America, N.A.*, No. 3:21-cv-00869-LB (N.D. Cal) (Mary Alexander & Associates, P.C.); *Chong v. Bank of America*, No. 2:20-cv-10052-FLA-RAO (C.D. Cal.) (Gubernick Law, P.L.L.C., and The Law Offices of David N. Lake, P.C.); *Zoelle v. Bank of America, N.A.*, No. 2:21-cv-00518-DDP-JPR (C.D. Cal) (Hamner Law Offices, APLC); *Wiggins v. Bank of America, N.A.*, No. 2:21-cv-00319-MCE-KJN (E.D. Cal.) (Gardner, Janes, Nakken, Hugo & Nolan).

A.      **Common Questions of Fact**

California's unemployment benefits are administered by the California Employment Development Department ("EDD"). Since 2010, Bank of America has had an exclusive contract with the EDD to distribute unemployment benefits to millions of individual benefits recipients. Under that exclusive contract, EDD periodically transfers unemployment benefit payments to Bank of America, which then deposits those funds into individual Bank of America accounts established for each recipient. Bank of America also issues to each benefits recipient a prepaid debit card linked to their individual account, pursuant to the terms of a cardholder agreement between Bank of America and each recipient.

Plaintiffs in the Related Actions are all benefits recipients who allege that Bank of America failed to safeguard unemployment payments and personal information during the Covid-19 pandemic from fraudulent unauthorized transactions and/or unlawfully froze cardholder accounts. *See* Ex. 1 (*Chong* Compl.) ¶¶ 16–41; Ex. 2 (*Zoelle* Compl.) ¶¶ 5–16 (focusing on freezing of accounts); Ex. 3 (*Wiggins* Compl.) ¶¶ 18–38; Ex. 4 (*Yick* Compl.) ¶¶ 19–32, 41–54; Ex. 5 (*Rodriguez* Compl.) ¶¶ 16–24, 33–35; Ex. 6 (*Willrich* Compl.) ¶¶ 19–32, 41–47; Ex. 7 (*McClure* Compl.) ¶¶ 30–43, 50–54; Ex. 8 (*Oosthuizen* Compl.) ¶¶ 16–25, 38; Ex.9 (*Wilson* Compl.) ¶¶ 13–21; Ex. 10 (*Mosson* Compl.) ¶¶ 21–32, 37–43; Ex. 11 (*Cajas* Compl.) ¶¶ 19–32, 39–44. This is a massive problem directly affecting hundreds of thousands of Californians who receive unemployment benefits, and thus has received sustained and ongoing attention from the media, the California State Auditor, and the California Legislature.[2]

---

[2] *See, e.g.*, Michael Finney & Simone Chavoor, "Bank of America addresses freezing accounts, fraud in state assembly hearing," *ABC7 News San Francisco* (Jan. 27, 2021), *available at* https://abc7news.com/edd-suspended-bank-of-america-card-closed-verify-identity-california-unemployment/10043061/; Kenny Choi, "California Lawmakers Grill Bank of America Over Handling of Massive EDD Bank Card Fraud," *CBS5 SF Bay Area (KPIX)* (Jan. 26, 2021), *available at* https://sanfrancisco.cbslocal.com/2021/01/26/ca-lawmakers-grill-bank-of-america-over-its-handling-of-massive-edd-bank-card-fraud/; Patrick McGreevy, "California unemployment fraud amid COVID-19 pandemic may total $2 billion, Bank of America says," *Los Angeles Times* (Dec. 7, 2020), *available at* https://www.latimes.com/california/story/2020-12-07/bank-of-america-estimate-2-billion-california-unemployment-fraud; Assemblyman Philip

With respect to Bank of America's alleged failure to safeguard funds, Plaintiffs in all the Related Actions except one (*Zoelle*) allege that this failure was the result of, among other things, Bank of America negligently issuing benefits recipients prepaid debit cards with outdated magnetic stripe technology (i.e., without the fraud-preventing EMV microchips that are now commonplace in consumer debit and credit cards) and Bank of America having insufficient data-security practices, which led to a data breach involving benefits recipients' prepaid debit card and/or account information. *See* Ex. 1 (*Chong* Compl.) ¶¶ 16–20; Ex. 3 (*Wiggins* Compl.) ¶¶ 18–38; Ex. 4 (*Yick* Compl.) ¶¶ 19–32; Ex. 5 (*Rodriguez* Compl.) ¶¶ 16–20; Ex. 6 (*Willrich* Compl.) ¶¶ 19–32; Ex. 7 (*McClure* Compl.) ¶¶ 30–43; Ex. 8 (*Oosthuizen* Compl.) ¶¶ 16–20; Ex. 9 (*Wilson* Compl.) ¶¶ 13–17; Ex. 10 (*Mosson* Compl.) ¶¶ 21–32; Ex. 11 (*Cajas* Compl.) ¶¶ 19–32, 39–44.

Plaintiffs further allege that Bank of America made it virtually impossible for them to report fraudulent unauthorized transactions to the bank and to submit claims to have the unauthorized transactions reversed and the stolen funds restored. *See* Ex. 2 (*Zoelle* Compl.) ¶ 14; Ex. 3 (*Wiggins* Compl.) ¶¶ 39–47; Ex. 4 (*Yick* Compl.) ¶¶ 45–65; Ex. 6 (*Willrich* Compl.) ¶¶ 45–60; Ex. 7 (*McClure* Compl.) ¶¶ 55–75; Ex. 8 (*Oosthuizen* Compl.) ¶¶ 26–30; Ex. 9 (*Wilson* Compl.) ¶¶ 23–29; Ex. 10 (*Mosson* Compl.) ¶¶ 45–51; Ex. 11 (*Cajas* Compl.) ¶¶ 45–56.

Finally, Plaintiffs allege that Bank of America failed to provide provisional credit during the pendency of its investigations into claims alleging unauthorized transactions, closed claims without adequately reviewing them, and/or failed to restore stolen funds—all in violation federal and state law and its cardholder agreement with Plaintiffs. *See* Ex. 1 (*Chong* Compl.) ¶¶ 36–40; Ex. 2 (*Zoelle* Compl.) ¶¶ 14, 34–36; Ex. 3 (*Wiggins* Compl.) ¶¶ 39, 80–83; Ex. 4 (*Yick* Compl.)

---

Y. Ting et al., Letter to Bank of America CEO Brian Moynihan (Nov. 24, 2020), *available at* https://a19.asmdc.org/sites/a19.asmdc.org/files/pdf/b-letter-ceo-fnl.pdf (open letter from 59 California legislators stating that "[e]very legislative office in our state has experienced an unprecedented number of constituents contacting them requesting assistance to resolve issues with the California Employment Development Department (EDD), as well as with their Bank of America debit cards," and requesting answers to specific questions).

¶¶ 45–54, 97–101; Ex. 5 (*Rodriguez* Compl.) ¶¶ 35–36, 67–71; Ex. 6 (*Willrich* Compl.) ¶¶ 50–60, 95–99; Ex. 7 (*McClure* Compl.) ¶¶ 55–56, 83–87; Ex. 8 (*Oosthuizen* Compl.) ¶¶ 4, 26–30; Ex. 9 (*Wilson* Compl.) ¶¶ 19–20, 63–67; Ex. 10 (*Mosson* Compl.) ¶¶ 50–51; Ex. 11 (*Cajas* Compl.) ¶¶ 45, 96–99.

### B.   Common Claims, Legal Theories, and Relief Sought

At least ten of the eleven Related Actions bring the same four claims: negligence (10 actions); breach of the cardholder agreement (10 actions); violations of the Electronic Funds Transfer Act ("EFTA") (15 U.S.C. § 1693 *et seq.*), which provides rules that financial institutions must follow in addressing unauthorized transactions and other errors on customer accounts (10 actions); and violations of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 *et seq.*), which prohibits unfair, fraudulent, or unlawful business practices (11 actions). *See, e.g.*, Ex. 1 (*Chong* Compl.) (bringing only these four claims); Ex. 2 (*Zoelle* Compl.) (bringing three of these claims, plus claims for conversion and unjust enrichment that are based on largely the same facts and issues as those underlying the EFTA claim).

Nine of the Related Actions (i.e., all eight Northern District cases and the one Eastern District case) also allege that Bank of America's failure to protect unemployment benefits from unauthorized fraudulent transactions stems in significant part from a data breach involving benefits recipients' prepaid debit cards and/or accounts, giving rise to claims under the California Consumer Privacy Act ("CCPA") (Cal. Civ. Code § 1798.100 *et seq.*), as well as related negligence and contract claims (discussed in the next paragraph). These data-breach claims raise complex factual and legal issues, including the nature and extent of Bank of America's data-security practices, whether those practices met industry standards, how the unauthorized access occurred, the extent of personal information affected by the breach, when Bank of America knew or should have known about the breach, the extent to which Bank of America investigated and sought to remedy the breach, and the extent to which Bank of America disclosed or otherwise warned Plaintiffs and class members about the breach.

Finally, many of the Plaintiffs bring additional contract and negligence claims, including claims for breach of implied contract (7 actions), breach of the implied covenant of good faith and fair dealing (7 actions), breach of the contract between Bank of America and EDD under a third-party beneficiary theory (6 actions), negligent performance of contract (4 actions), and negligent failure to warn (4 actions). *See, e.g.*, Ex. 4 (*Yick* Compl.) (bringing ten claims, including all those listed above); Ex. 7 (*McClure* Compl.) (same); Ex. 9 (*Wilson* Compl.) (same); Ex. 11 (*Cajas* Compl.) (same).

For relief, Plaintiffs in the Related Actions seek declaratory relief, injunctive relief, compensatory damages, punitive damages, restitution, and attorney fees. Many of the Plaintiffs bringing CCPA claims also seek statutory damages under the CCPA, which alone could be worth hundreds of millions of dollars to the proposed class. *See* Cal. Civ. Code § 1798.150 (a)(1)(A) (providing for statutory damages of up to $750 for each person whose personal information is disclosed in violation of the CCPA).

As suggested by the nature of the allegations and the size of the putative class, the Related Actions will involve complex and voluminous electronic discovery. This will include discovery and analysis of months of Bank of America account and card data comprising millions of transactions, and discovery concerning Bank of America's practices and conduct over several months as relates to fraud detection, data security, customer service, and communications with class members. Such data and other information is key not only to Bank of America's potential liability, but also to determining the sizes and composition of the putative class and any subclasses. Should the cases remain in separate districts, there will inevitably be duplicative motions, depositions, and production of documents.

### C.       Similar Class Definitions

The proposed class definitions in the Related Actions substantially overlap and are largely similar. That said, some proposed class definitions are slightly broader, and others are slightly narrower—though the broader class definitions generally subsume the narrower ones.

*Compare, e.g*, Ex. 8 (*Oosthuizen* Compl.) ¶ 41 (broader: "All persons who were issued or who used a Bank of America debit card for the purpose of accessing EDD benefits deposited into a Bank of America account, at any time from January 1, 2020 through the present ('Class Period').")*, and* Ex. 2 (*Zoelle* Compl.) ¶ 17 (broader: "All persons who in 2020 were legitimately awarded unemployment insurance benefits from the EDD through an EDD debit card to be administered by B of A, which B of A thereafter froze, closed, deducted funds from, and/or otherwise blocked access to.")*, with* Ex. 1 (*Chong* Compl.) ¶ 42 (narrower: "The Regulation E-Class: All holders of EDD Cards who, from June 1, 2020 to the present, reported a fraudulent withdrawal, were granted a credit, and then had the credit reversed by BOA. The Access Denial Class: All holders of EDD Cards who were denied access to unemployment benefits as a result of BOA's decision to freeze accounts or reverse prior credits from June 1, 2020 to the present."). If multiple proposed classes in the Related Actions were to be certified, complicated and inconsistent outcomes would almost certainly ensue.

###### D.    Similar Procedural Postures

Finally, all the Related Actions are in similarly preliminary procedural postures. The Related Actions were all filed between November 2020 and February 2021. The only responsive pleading or dispositive motion filed in any of the Related Actions is a motion to dismiss for failure to state a claim filed in the Central District *Chong* case on January 28, 2021, which is set to be heard on April 9, 2021. *See* Ex. 1 (*Chong* docket) at ECF No. 14; *see also supra* Parts I-B, I-C (noting that the *Chong* case brings only four claims and has a narrower proposed class definition). The *Chong* plaintiffs' Opposition to the motion to dismiss is due on March 19, 2021, and Bank of America's Reply is due on March 26, 2021. *See* C.D. Cal. Local Civ. R. 7-10 to 7-11. No discovery has been conducted in any of the Related Actions.

By far the largest cohort of Related Actions (8 of 11 actions) is in the Northern District, which is also where the litigation is currently the most coordinated and organized. The eight Northern District actions have been related and assigned to a single judge, the Honorable Vince

Chhabria. *See, e.g.*, Ex. 4 (*Yick* docket) at ECF No. 29 (Related Case Order entered Feb. 11, 2021). There is a pending motion to consolidate the Northern District cases and to appoint interim co-lead counsel and a proposed executive committee, which is set to be heard by Judge Chhabria on March 25, 2021. *See id.* at ECF No. 34 (motion filed Feb. 12, 2021). All of the non-moving Northern District plaintiffs have joined in the motion to consolidate. *Id.* at ECF Nos. 35–38, 40–42 (joinders). The bank's response to the motion is due by February 26, 2021. *Id.* at ECF No. 34. By contrast, the two cases pending in the Central District have not been related, and no motion to relate them has been filed. Exs. 1–2 (*Chong* and *Zoelle* dockets). The lone case in the Eastern District was just filed on February 18, 2021, and there has been no activity to date. Ex. 3 (*Wiggins* docket).

## II.   <u>ARGUMENT</u>

As set forth below, the JPML should grant this motion to transfer the Related Actions, and any similar tag-along actions that may be filed, to the Northern District of California (San Francisco Division) before the Honorable Vince Chhabria for consolidated or coordinated pretrial proceedings. The Related Actions are complex and involve common facts, claims, legal theories, relief sought, and overlapping proposed class definitions. Similar issues will necessarily arise in each of the Related Actions, which will benefit significantly from pretrial consolidation or coordination. The Northern District of California has the technology and ability to handle complex class actions against financial institutions, and Judge Chhabria, who has previously presided over multiple MDL matters, is more than qualified to handle the proceedings. Finally, the Northern District of California (San Francisco) would be the most convenient location for Plaintiffs and Bank of America to consolidate or coordinate pretrial proceedings because it is the geographic center of the Related Actions, and because the majority of the actions are already pending there.

### A.     The Related Actions Should Be Transferred and Centralized for Consolidated or Coordinated Pretrial Proceedings.

The "basic purpose" of multidistrict litigation is to secure the "just, speedy and inexpensive determination of every action." *In re Nat'l Student Mktg. Litig.*, 368 F. Supp. 1311, 1316 (J.P.M.L. 1972). Section 1407 permits transfer and centralization of cases that are pending in different districts if (1) the cases "involve one or more common questions of fact"; (2) transfer and centralization "will promote the just and efficient conduct of such actions"; and (3) transfer and centralization will further the "convenience of the parties and witnesses." 28 U.S.C. § 1407(a). The aim of § 1407 is to "eliminate duplication in discovery, avoid conflicting rules and schedules, reduce litigation costs, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." *Gelboim v. Bank of America Corp.*, 574 U.S. 405, 410 (2015) (quoting Manual for Complex Litigation § 20.131 (4th ed. 2004)). Transfer of the Related Actions for consolidated or coordinated pretrial proceedings will satisfy each of these requirements and will advance § 1407's underlying objectives.

### 1.     Transfer is appropriate because the Related Actions involve complex common questions of fact and law.

The JPML has consistently held that cases involving overlapping complex factual and legal issues are particularly appropriate for transfer and centralization for consolidated or coordinated pretrial proceedings—even if the parties and claims are not identical, or if there are differing legal theories or remedies sought. *See In re Bank of N.Y. Mellon Corp. Foreign Exch. Transactions Litig.*, 857 F. Supp. 2d 1371, 1373 (J.P.M.L. 2012) (finding transfer appropriate notwithstanding different parties and legal theories because "[a]ll actions share factual issues arising from allegations concerning BNY Mellon's provision of foreign exchange [] services to its clients"); *In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, 398 F. Supp. 2d 1365, 1366 (J.P.M.L. 2005) (holding that the "presence of differing theories or remedies is outweighed when the underlying actions still arise from a common factual core, as the actions do here"); *In re Radiation Incident at Washington*, 400 F. Supp. 1404, 1405 (J.P.M.L.

8

1975) (holding that six actions in two federal districts should be centralized into a single MDL because there were common questions of fact, notwithstanding that factual questions relating to damages were unique to each action); *In re Multidistrict Private Civil Treble Damage Litig. Involving Plumbing Fixtures*, 308 F. Supp. 242, 244 (J.P.M.L. 1970) (noting that the "potential for conflicting or overlapping class actions presents one of the strongest reasons for transferring [] related actions to a single district for coordinated or consolidated pretrial proceedings which will include an early resolution of such potential conflicts").

Here, the Related Actions are putative class actions that arise from a common factual core, are all brought against the same defendant, and share many common legal claims and issues. Specifically, the Plaintiffs in the Related Actions all allege that Bank of America failed to safeguard hundreds of thousands of Californians' unemployment benefits from fraudulent unauthorized transactions, and that Bank of America unlawfully froze benefits recipients' prepaid debit cards and accounts. Plaintiffs further allege that Bank of America made it virtually impossible for them to report or seek reimbursement for the fraudulent transactions on their accounts and failed to provide them provisional credit, to adequately review their claims of fraud, or to reimburse them for the stolen funds, all in violation of federal and state law, and in breach of each plaintiff's cardholder agreement with the bank.

At least ten of the eleven Related Actions bring similar claims for negligence, breach of contract, violations of Regulation E of the federal Electronic Funds Transfer Act, and violations of California's Unfair Competition Law. Nine of the Related Actions also allege that Bank of America failed to secure their account or card information in violation of the California Consumer Privacy Act. A majority of the Related Actions also bring additional contract and negligence claims for breach of implied contract, breach of the implied covenant of good faith and fair dealing, and breach of the contract between Bank of America and EDD under a third-party beneficiary theory.

9

The Plaintiffs' allegations in each Related Action arise from common factual issues concerning Bank of America's conduct, policies, and procedures related to its alleged failure to prevent the large-scale fraud and to properly address unauthorized transactions. The Related Actions contend that Bank of America's conduct breached applicable contracts; violated applicable federal and state statutes and regulations; and committed these violations willfully or at least negligently. Each Related Action also contends that all Rule 23 class certification requirements have been met. Resolution of these common factual and legal issues in the Related Actions will necessarily rely upon common evidence. If the Related Actions are litigated in separate forums, it will lead to duplicative discovery and motion practice and will likely result in conflicting pretrial rulings, particularly with regard to class certification. The Related Actions should therefore be transferred to a central forum for consolidated or coordinated pretrial proceedings, so that the complex issues in this litigation can be addressed efficiently and adjudicated consistently.

> ### 2.   Transfer and centralization will promote the just and efficient conduct of the Related Actions.

Section 1407's "remedial aim is to eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491–93 (J.P.M.L. 1968). "It is in the field of class action determinations in related multidistrict civil actions that the potential for conflicting, disorderly, chaotic judicial action is the greatest." *Id.* at 493; *see also In re Tyson Foods, Inc. Chicken Raised Without Antibiotics Consumer Litig.*, 582 F. Supp. 1378, 1379 (J.P.M.L. 2008) (consolidating nine putative class actions because doing so would, among other things, "prevent inconsistent pretrial rulings (particularly with respect to class certification)"); *In re Plumbing Fixtures*, 308 F. Supp. 242, 244 (J.P.M.L. 1970) (transferring four putative class actions to a single judge, stating that "a potential for conflicting or overlapping class actions presents one of the strongest reasons for transferring such related

actions to a single district for coordinated pretrial proceedings which will include an early resolution of such potential conflicts"). Equally important are § 1407's efficiency-related aims to "eliminate duplication in discovery, avoid conflicting rules and schedules, reduce litigation costs, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." *Gelboim*, 574 U.S. at 410; *see also In re Commodity Exchange, Inc., Gold Futures & Options Trading Litig.*, 38 F. Supp. 3d 1394, 1395 (J.P.M.L. 2014) (finding that centralization would "eliminate duplicative discovery . . . and conserve the resources of the parties, their counsel, and the judiciary").

Here, due to the overlapping factual and legal theories, as well as the overlapping proposed class definitions, the Related Actions will involve many of the same pretrial issues. Such issues will include those related to class certification, discovery, and dispositive motions— all of which will benefit from centralized management and coordination. Regarding class certification, Plaintiffs' various proposed class definitions have substantial overlap, but they are far from identical. This is due in significant part to fifteen named plaintiffs, represented by thirteen law firms, having brought eleven complaints, many of which assert different combinations of legal claims, and some of which emphasize different factual aspects of how Bank of America's alleged conduct over many months has adversely impacted hundreds of thousands of California unemployment benefits recipients. Additionally, as stated above in Part I-C, some of the proposed class definitions are narrower, while others are broader. Against this backdrop, there is great potential for overlapping or conflicting class definitions, which the JPML has stated is one of the "strongest reasons" for transferring related cases to single district for coordinated pretrial proceedings. *In re Plumbing Fixtures*, 308 F. Supp. at 244.

As for discovery, the nature and scope of Plaintiffs' substantially similar allegations regarding Bank of America's conduct, policies, and practices, indicates that the quantity and complexity of discovery will be immense. If Plaintiffs continue to proceed in three different districts, they will undoubtedly request many of the same data and documents and seek to depose

many of the same witnesses. Transfer and centralization will help to eliminate duplicative discovery and depositions; reduce discovery-related travel, costs, and schedule conflicts; eliminate duplicative discovery disputes and motion practice; and avoid conflicting rulings on discovery disputes—all of which will save the time and effort of the parties, counsel, witnesses, and the judiciary.

On the other hand, addressing these issues district-by-district will likely result in duplication of effort and wasted resources, while increasing the risk of inconsistent rulings. *In re Commercial Money Ctr., Inc. Equip. Lease Litig.*, 229 F. Supp. 2d 1379, 1380 (J.P.M.L. 2002) (finding that centralization of cases would prevent inconsistent pretrial rulings); *In re Midwest Milk Monopolization Litig.*, 379 F. Supp. 989, 991 (J.P.M.L. 1974) (centralizing litigation, in part, because of "the salutary effect of placing control of the pretrial proceedings in this complex litigation in the hands of a single judge who, with an overall perspective of the entire litigation . . . can schedule the discovery to minimize the expense to the parties and maximize the just and expeditious termination of the litigation").

### 3. Transfer and Centralization Will Further the Convenience of the Parties and Witnesses.

Transfer and centralization will also serve the overall "convenience of the parties and witnesses" consistent with § 1407(a). *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, 2018 U.S. Dist. LEXIS 170489, at *2–3 (J.P.M.L. Oct. 3, 2018) (noting that the JPML looks to the "overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation"). As stated above, the elimination of duplicative discovery would significantly increase convenience for the parties (especially Bank of America) and witnesses.

Additionally, most of the named Plaintiffs (9 of 15) representing most of the Related Actions (8 of 11) chose to file their complaints in the Northern District, indicating that this is the most convenient forum for them to litigate this matter. The one named plaintiff that recently filed in the Eastern District resides in Oak Grove, California (Ex. 3 [*Wiggins* Compl.] ¶ 9), which is

approximately 100 miles from the U.S. District Court in San Francisco (*see* GoogleMaps, https://goo.gl/maps/Jrnx4htUNCKvsfkV6), while the two named plaintiffs in the *Chong* case reside in Los Angeles County, California (Ex. 3 [*Chong* Compl.] ¶¶ 6–7), which is approximately 380 miles from the U.S. District Court in San Francisco (*see* GoogleMaps, https://goo.gl/maps/p4q2v744AtiKFgYk7). *See also* Ex. 2 (*Zoelle* Compl.) ¶ 2 (alleging only that the three named plaintiffs in that Central District case are "California residents"). As for defendant Bank of America, having the Related Actions centralized in a single district would be more convenient than having to litigate what is essentially the same matter in three different districts.

Transfer and centralization will also be more convenient for witnesses, including third-party witnesses, such as representatives and employees of EDD and third-party companies with which Bank of America has contracted to provide various aspects of customer service to California unemployment benefits recipients. For such third-party witnesses, responding to coordinated subpoenas for documents and deposition testimony from combined proceedings overseen by a single judge and subject to uniform discovery parameters is more convenient and less costly than responding to duplicative and uncoordinated discovery requests from multiple districts overseen by multiple judges, and likely subject to conflicting discovery rules. Additionally, as argued below, centralizing the Related Actions in the Northern District of California furthers the convenience of any potential EDD witnesses because it is within 90 miles of the Northern District (San Francisco), whereas the Central District (Los Angeles) is nearly 400 miles away.

In sum, transfer of the Related Actions to a single district court for coordinated or consolidated pretrial proceedings is appropriate under § 1407 because the Actions share numerous and complex common issues of fact and law, and because centralization would promote the just and efficient conduct of the Actions and serve the overall convenience of parties, witnesses, and the courts.

**B.      The Related Actions Should Be Transferred to and Centralized in the Northern District of California.**

The JPML considers numerous factors when determining the most appropriate transferee forum. Such factors include the relative number of cases pending in each jurisdiction, the district in which the cases with the broadest allegations are pending, the transferee forum's experience in managing class actions and complex litigation, and whether the district is in a geographically central and accessible metropolitan location. *See, e.g., In re Erie COVID-19 Bus. Interruption Prot. Ins. Litig.*, No. MDL 2969, 2020 WL 7384529, at *3 (J.P.M.L. Dec. 15, 2020) (transferring to forum that was "the clear center of gravity for this litigation," in large part because of the "sizeable number of actions" pending there); *In re Local TV Advert. Antitrust Litig.*, 338 F. Supp. 3d 1341, 1343 (J.P.M.L. 2018) (noting that transferee district "provides a geographically central and convenient location for the parties and witnesses"); *In re Bayer Healthcare LLC, Merial Limited Flea Control Prods. Mktg. & Sales Practices Litig.*, 844 F. Supp. 2d 1369, 1370 (2012) (noting the "experience of [the assigned judge] to guide this litigation to a prudent course" as a factor in assignment); *In re Viagra Prods. Liab. Litig.*, 414 F. Supp. 2d 1357, 1358 (2006) (selecting a transferee district with "a jurist experienced in complex multidistrict litigation" and "with the capacity to handle this litigation"); *In re Jamster Mktg. Litig.*, 427 F. Supp. 2d 1366, 1367 (2006) (transferring to district that offered "an accessible metropolitan location"); *In re Midwest Milk Monopolization Litig.*, 379 F. Supp. 989, 991 (J.P.M.L. 1974) (choosing transferee district, in significant part, because it "has become the center of gravity of this litigation" and because it is the venue of "the action containing the broadest allegations," despite recognizing that "other concentrations of litigation" existed in two other states).

Here, the Northern District of California (San Francisco Division) is the most appropriate and convenient venue for transfer and centralization of the Related Actions and any tag-along actions for several reasons. First, the Northern District is the center of gravity of this litigation. The large majority (8 of 11) of the Related Actions are already pending in the Northern District.

14

Second, the Northern District cases contain much broader allegations than those asserted in the two Central District cases. *Compare* Ex. 1 (*Chong* Compl.) ¶¶ 54–55 (Central District action bringing four claims, including a negligence claim based only on Bank of America's failure to provide prepaid debits cards with EMV microchips, and not also on a data breach), *and* Ex. 2 (*Zoelle* Compl.) ¶¶ 5–16 (Central District action bringing five claims and focused primarily on freezing of accounts, not on fraudulent unauthorized transactions), *with* Ex. 4 (*Yick* Compl.) (Northern District action bringing ten claims based on broader set of factual allegations), Ex. 7 (*McClure* Compl.) (same), Ex. 9 (*Wilson* Compl.) (same), *and* Ex. 11 (*Cajas* Compl.) (same).

Third, the actions pending in the Northern District are the most organized to date. They have already been related and assigned to a single judge, the Honorable Vince Chhabria, who is an experienced trial judge with experience handling MDL cases. *See, e.g.*, *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-md-2843-VC (N.D. Cal.); *In re Roundup Prods. Liab. Litig.*, No. 16-md-2741-VC (N.D. Cal.); *see also In re Roundup Prods. Liab. Litig.*, 214 F. Supp. 3d 1346, 1348 (J.P.M.L. 2016) (commending Chhabria as a "skilled jurist"). The Northern District cases are also the subject of a pending motion to consolidate and to appoint interim co-lead counsel and a proposed executive committee, in which *all* the non-moving Northern District plaintiffs have joined. Transferring the Related Actions to the Northern District would appropriately recognize these plaintiffs' prior cooperation in organizing the litigation. By contrast, there are only two cases in the Central District, which have not even been related, and the lone Eastern District case was just filed within the last week.

Fourth, the Northern District is also better able to handle this litigation because of lower caseloads than currently exist in the Central and Eastern Districts, both of which are currently under Judicial Emergencies declared by the Judicial Council of the Ninth Circuit. *See In re Approval of the Judicial Emergency Declared in the Central District of California*, Order (9th Cir. Apr. 9, 2020), *available at* https://tinyurl.com/ouse75k3 (declaring a judicial emergency in the Central District through Apr. 13, 2021); *In re Approval of the Judicial Emergency Declared*

15

*in the Eastern District of California*, Order (9th Cir. Apr. 16, 2020), *available at* https://tinyurl.com/e29tuh7j (declaring a judicial emergency in the Eastern District through May 2, 2021); *see also* E.D. Cal. website, "Eastern District of California's Judicial Emergency Exacerbated by the Coronavirus Disease-2019 (COVID-19) Pandemic," *available at* https://tinyurl.com/hmda9q8n (noting that Eastern District "continues to experience a long-standing judicial emergency" and "long standing judgeship crisis," with the judgeship imbalance now "worse than ever"); *Vasquez v. Draper & Kramer Mortg. Corp*., No. 20-cv-06635-YGR, 2021 U.S. Dist. LEXIS 13572, at \*16 (N.D. Cal. Jan. 22, 2021) ("[T]he Court itself is aware of the burden currently facing the Central District which has a significant number of vacancies and, as a result, has higher caseloads [than the Northern District].").

Fifth, the Northern District (San Francisco Division) meets the criteria of providing a geographically central forum (i.e., San Francisco is geographically in the middle of where the Related Actions are pending) in an easily accessible metropolitan area.

Finally, to the extent that non-party EDD employees will need to produce documents related to EDD's contractual relationship with Bank of America or to be deposed, the district court in San Francisco is only 87 miles from EDD's headquarters in Sacramento (*see* GoogleMaps, https://goo.gl/maps/TDxBfvMraNwiBcQZ6), whereas the distance between EDD's headquarters and the district court in Los Angeles where the two Central District actions are pending is 384 miles (*see* GoogleMaps, https://goo.gl/maps/9G5kYakvjXBmTYxN9). Thus, in addition to being more conveniently located generally, the Northern District also has the distinct advantage of putting EDD's headquarters within the 100-mile radius for subpoenaing documents and witnesses under Fed. R. Civ. P. 45, and thus will limit any related disputes and costs. *Compare* Fed. R. Civ. P. 45(c)(1)(A) & (2)(A) (providing for subpoenas of witnesses and documents within 100 miles of where the person resides, is employed, or regularly transacts business), *with* Fed. R. Civ. P. 45 (c)(1)(B)(2) (adding an additional requirement of "and would

not incur substantial expense" if the witness is outside the 100-mile limitation and not a party or a party's officer).

For the foregoing reasons, Plaintiff Yick respectfully suggests that the Northern District of California is the forum best suited for centralization of the Related Actions.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Jennifer Yick respectfully requests that the JPML grant her motion to transfer the Related Actions from the various United States District Courts in which they are now pending to the Northern District of California (San Francisco Division) before the Honorable Vince Chhabria for coordinated or consolidated pretrial proceedings.

Respectfully submitted,

Dated: February 24, 2021

*/s/ Brian Danitz*
BRIAN DANITZ

**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577
bdanitz@cpmlegal.com

Attorneys for Plaintiff Jennifer Yick
and the Proposed Class in *Yick v. Bank of America, N.A.*, No. 3:21-cv-00376-VC (N.D. Cal.)